### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| NATASHA THOMAS, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION NO. 15-00393-B |
| | * | |
| vs. | * | |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Commissioner of Social | * | |
| Security, | * | |
| | * | |
| Defendant. | * | |

### ORDER

Plaintiff Natasha Thomas (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and 1381, *et seq*. On June 8, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**

Plaintiff filed her application for benefits on June 19, 2012.  (Tr. 157)[1].  Plaintiff alleged that she has been disabled since January 1, 2012 due to "mental illness, chronic depression, [and] schizophrenia."  (Id. at 156, 161).

Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Michael L. Brownfield (hereinafter "ALJ") on November 25, 2013.  (Id. at 43).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 47).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 59).  On February 25, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 31).  The Appeals Council denied Plaintiff's request for review on June 23, 2015.  (Id. at 4).  Therefore, the ALJ's decision dated February 25, 2014 became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties waived oral argument on June 8, 2016 (Doc. 18), and agree that this case is now ripe for judicial review and is properly before

---

[1] When referencing the Social Security Transcript, the Court uses the page numbers found on the transcript, rather than the page numbers utilized by CM-ECF.

this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> 1. **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist, Dr. Sanjay Singh, M.D., Plaintiff's consulting psychologist, Dr. Terasa Davis, Psy.D., and Plaintiff's examining psychiatrist, Dr. David W. Hodo, M.D., while at the same time giving significant weight to the opinions of non-examining, State Agency psychologist, Dr. Gloria Roque, Ph.D.?**

## III. Factual Background

Plaintiff was born on September 27, 1971, and was forty-one years of age at the time of her administrative hearing on November 25, 2013. (Tr. 43, 156). Plaintiff testified that she did not graduate from high school, but she received her GED. (Id. at 48). Plaintiff last worked in Syracuse, New York, for seven years, from August 2004 to December 2011, as a home attendant for the elderly. (Id. at 51-52, 171, 305). She had to stop working because "things got too much for [her] mentally and [she] just couldn't handle it." (Id. at 51). She cannot work now because she has "a hard time focusing," "can't concentrate," and has "bad anxiety." (Id. at 52). Plaintiff moved to Alabama in June 2012 and filed her application for

benefits on June 19, 2012.  (Id. at 50, 157).

Plaintiff testified at her hearing that she is taking medication (Risperdal and Zoloft) prescribed by her treating psychiatrist at West Alabama Mental Health ("WAMH") and that WAHH assisted her in obtaining and paying for the medication because she could not afford it.  (Id. at 52-53).  Plaintiff testified that her medication makes her drowsy, and she has to lie down for about seven hours during the daytime most days. (Id. at 54).  According to Plaintiff, she stopped going to West Alabama Mental Health Center in March 2013 because they started charging her a co-pay, which she cannot afford.  (Id. at 56). Plaintiff testified that she still has feelings of worthlessness and suicidal thoughts, but she is no longer using cocaine or alcohol.  (Id. at 58-59).

According to Plaintiff, she has only about two good days a week.  (Id. at 54-55).  On her good days, she sits and eats, and on her bad days, she sleeps.  (Id.).  In her Function Report submitted to the Agency, Plaintiff reported that she can feed herself and use the toilet, but she gets "fatigue[d]" dressing and bathing.  (Id. at 180).  In addition, she needs reminders to take her medication and to take care of her personal care needs. (Id. at 181).  Plaintiff stated that she can only pay attention for one minute; she cannot finish what she starts; she cannot handle stress or changes in routine; she cannot follow written

4

or spoken instructions; she cannot cook or clean; she cannot shop; she cannot handle money; and she cannot get along with authority figures.[2]  (Id. at 181-82, 184-85).  However, she has never been fired from a job because of problems getting along with other people.  (Id. at 185).

Plaintiff testified that she lives with her aunt, that she has been separated from her husband for about five years, and that her six children are all grown, except for her nine-year-old son who lives with his father in New York.  (Id. at 48-49, 52).  Plaintiff testified that she does not clean; she does not shop because people make her nervous; and she does not go to church.  (Id. at 55).  In addition, she has never had a driver's license because of her "bad nerves;" she has never had a checking account or written a check; and she has to be accompanied when she goes to the doctor.  (Id. at 53-54, 183).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's

---

[2] In her undated Function Report submitted to the Agency, Plaintiff stated that she has problems getting along with her family and friends because "they [are] trying to steal [her] brain."  (Tr. 184).  Plaintiff stated: "I don't like people[;] make them go away[;] please help me."  (Id.).  In her undated Disability Report – Appeals, submitted to the Agency, Plaintiff stated that she is "paranoid," explaining: "[P]eople are trying to kill me.  I need to find a secret place to hide out."  (Id. at 189).

role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.  Discussion**

An individual who applies for Social Security disability

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

benefits must prove his or her disability.   20 C.F.R. §§
404.1512, 416.912.   Disability is defined as the "inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months."   42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§
404.1505(a), 416.905(a).   The Social Security regulations
provide a five-step sequential evaluation process for
determining if a claimant has proven his disability.[4]   20 C.F.R.

---

[4] The claimant must first prove that he or she has not engaged in
substantial gainful activity.   The second step requires the
claimant to prove that he or she has a severe impairment or
combination of impairments.   If, at the third step, the claimant
proves that the impairment or combination of impairments meets
or equals a listed impairment, then the claimant is
automatically found disabled regardless of age, education, or
work experience.   If the claimant cannot prevail at the third
step, he or she must proceed to the fourth step where the
claimant must prove an inability to perform their past relevant
work.   Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).   In
evaluating whether the claimant has met this burden, the
examiner must consider the following four factors: (1) objective
medical facts and clinical findings; (2) diagnoses of examining
physicians; (3) evidence of pain; and (4) the claimant's age,
education and work history.   Id.   Once a claimant meets this
burden, it becomes the Commissioner's burden to prove at the
fifth step that the claimant is capable of engaging in another
kind of substantial gainful employment which exists in
significant numbers in the national economy, given the
claimant's residual functional capacity, age, education, and
work history.   Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.
1985).   If the Commissioner can demonstrate that there are such
jobs the claimant can perform, the claimant must prove inability
to perform those jobs in order to be found disabled.   Jones v.
Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).   See also Hale v.

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date, and that she has the severe impairments [5] of depressive disorder with psychotic features, [6] anxiety disorder, and history of polysubstance (alcohol, cocaine, and cannabis) abuse. [7] (Tr. 21).  The ALJ further found

---

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[5] The ALJ found Plaintiff's impairment of ovarian cyst to be non-severe.  (Tr. 22).  Plaintiff has not raised any issue on appeal related to this finding or to any other finding by the ALJ related to any alleged physical impairment.  (Doc. 13).

[6] As the ALJ correctly noted, the record also contains references to schizophrenia but only in "past medical history reported by [Plaintiff]," not in a diagnosis by an acceptable medical source.  (Tr. 22).  Nonetheless, the ALJ considered Plaintiff's allegations of auditory and visual hallucinations, as well as paranoia, as evidenced by his finding of "psychotic features" with Plaintiff's depressive disorder.  (Id.).

[7] As Defendant points out, the law precludes the award of benefits "when substance abuse is a contributing factor material to a disability finding."  Green v. Colvin, 2014 U.S. Dist. LEXIS 48625, *3, 2014 WL 1379969, *1 (S.D. Ga. Apr. 8, 2014), *report and recommendation adopted,* 2014 U.S. Dist. LEXIS 72721, 2014 WL 2322822 (S.D. Ga. May 28, 2014) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).  Accordingly, when an ALJ finds a claimant disabled, and medical evidence of substance abuse exists, the ALJ must then determine whether the abuse is "a contributing factor material to the determination of disability."  Harris v. Colvin, 2016 U.S. Dist. LEXIS 36706, *5, 2016 WL 1117645, *2 (N.D. Ala. Mar. 22, 2016) (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)).  In such cases, if the ALJ determines that the claimant would not be disabled if he or she stopped the substance abuse, then the claimant is not considered disabled under the SSA.  See Hunt v. Soc. Sec. Admin.,

that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 22).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: Plaintiff "is limited to non-complex job tasks, and she is limited to no more than occasional contact with the general public and coworkers." (Id. at 28).   The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible for the reasons explained in the decision.  (Id. at 29).

The ALJ found that Plaintiff is unable to perform any of her past relevant work.  (Id. at 30).  However, utilizing the

Commissioner, 631 Fed. Appx. 813, 815 (11th Cir. 2015).  Where as here, the ALJ conducts the five-step inquiry and finds that, even considering the medical evidence of substance abuse, the claimant is not disabled, then the claimant is not entitled to benefits, and there is no need to proceed with the additional analysis under 20 CFR §§ 404.1535 or 416.935.  See Green, 2014 U.S. Dist. LEXIS 48625 at *8, 2014 WL 1379969 at *3.  Having found herein that substantial evidence supports the ALJ's finding that Plaintiff is not disabled, the ALJ was not required to further consider whether Plaintiff's substance abuse would have negated any finding of disability.  Harris, 2016 U.S. Dist. LEXIS 36706 at *5, 2016 WL 1117645 at *2.

testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a full range of work at all exertional levels with the stated non-exertional limitations, as well as her age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as "night cleaner," "hand packager," and "laundry worker," all of which are classified as medium and unskilled. (Id. at 31). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### Issue

**Whether the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist, Dr. Sanjay Singh, M.D., Plaintiff's consulting psychologist, Dr. Terasa Davis, Psy.D., and Plaintiff's examining psychiatrist, Dr. David W. Hodo, M.D., while at the same time giving significant weight to the opinions of non-examining, State Agency psychologist, Dr. Gloria Roque, Ph.D.?**

In this case, Plaintiff argues that the ALJ erred in rejecting the opinions of her treating psychiatrist, Dr. Sanjay Singh, M.D., consulting psychologist, Dr. Terasa Davis, Psy.D., and examining psychiatrist, Dr. David W. Hodo, M.D., while at the same time giving significant weight to the opinions of non-examining, State Agency psychologist, Dr. Gloria Roque, Ph.D.

(Doc. 13 at 6).  The Commissioner counters that the ALJ afforded the proper weight to the opinions of Dr. Singh, Dr. Davis, Dr. Hodo, and Dr. Roque, he weighed those opinions against the substantial evidence in the case, and he properly discredited any opinions and findings that were inconsistent with the substantial evidence in the case.  (Doc. 15).  Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.  In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so.  Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a

one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the

evidence supports a contrary conclusion." <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); <u>Adamo v. Commissioner of Soc. Sec.</u>, 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

Plaintiff's alleged onset date is January 1, 2012. (<u>Id.</u> at 156). The record shows that on May 30, 2012, Plaintiff was admitted to the hospital in Syracuse, New York, for two days for a psychiatric evaluation after presenting to the emergency room for treatment of "alcohol intoxication" and "suicidal thoughts."[8] (Tr. 210, 220, 227). During her evaluation, Plaintiff reported using crack cocaine every other day and using alcohol daily. She also reported a history of anxiety and depression, alcohol, cannabis, and crack cocaine abuse, several prior rehabilitation treatments, and two previous suicide attempts. (<u>Id.</u> at 212-13, 215-16, 218, 220). Plaintiff denied hallucinations and delusions but reported thoughts of suicide. (<u>Id.</u> at 212). She was oriented to person, place, and time. (<u>Id.</u>). Her strengths were noted as "able to work,"[9] and "verbal" skills. (<u>Id.</u> at 215).

---

[8] Plaintiff's medical records show that her blood alcohol level was .212, and that she was using cocaine. (Tr. 220).

[9] Plaintiff reported that she was collecting unemployment benefits at the time and had worked until June 2010. (Tr. 220).

Plaintiff's mental status examination revealed that she was "depressed," that her judgment and insight were limited, that she was cooperative, that she had good eye contact, that her memory and orientation were intact, that her attention and concentration were good, that her speech, thought processes, and associations were normal, that she had no delusions or psychotic thoughts, and that her fund of knowledge was adequate. (Id. at 221). She was assessed with "depressive syndrome disorder made worse by cocaine dependency." (Id. at 221). Her specific diagnoses were cocaine dependence, continuous use; alcohol dependence, episodic; and depressive disorder. (Id.). Plaintiff was discharged on June 1, 2012, with medications (Buspar and Zoloft) and a bus ticket to Tuscaloosa, Alabama, to see her brother. (Id. at 242-45). Plaintiff's mental status evaluation on that date was within normal limits. (Id. at 245).

Plaintiff arrived in Alabama in June 2012 and filed her applications for social security benefits on June 19, 2012. (Tr. 50, 157). Approximately one month later, on July 27, 2012, consultative psychologist, Dr. Terasa Davis, Psy.D., examined Plaintiff at the request of the Agency. (Id. at 303). Plaintiff reported to Dr. Davis that she had filed her sixth application for social security disability benefits. (Id.). During the interview, Plaintiff expressed a plan to commit suicide. As a result, Dr. Davis terminated the evaluation and

sent Plaintiff to the emergency room at Northport Medical Center. (Id.).

Upon arriving at Northport Medical Center on July 27, 2012, Plaintiff was admitted for two days for treatment of "suicidal ideations" and "psychosis." (Id. at 262-63). Plaintiff reported being off of her medications since June 2012.[10] (Id. at 268, 273). Dr. Sanjay K. Singh, M.D., treated Plaintiff during her admission. He noted a reported history of substance abuse, a reported history of schizophrenia, and a current positive test result for cannabis use. (Id. at 262, 271, 273). Dr. Singh placed Plaintiff back on her medication (Risperdal and Zoloft) and discharged her on July 29, 2012, with the diagnoses of "depressive disorder, NOS," and "polysubstance abuse." He noted that Plaintiff was "feeling better," that she was stable, that her "mood [had] improved," that she had "no overt symptoms of psychosis" and no suicidal or homicidal ideation, and that she was "psychiatrically stable to be discharged." (Id. at 262, 273-74).

Plaintiff resumed her consultative examination with Dr. Davis eight days later, on August 6, 2012, at which time she reported that her suicidal ideations had decreased significantly

---

[10] Plaintiff reported that since moving to Alabama from New York, she had not been able to find a doctor to prescribe her medications. (Tr. 268).

following treatment.[11]  Plaintiff also reported that she was off of her medication again because she was unable to afford it. (Id. at 303-04).  She stated that she felt that she was a "big inconvenience" to her family, and she reported feelings of irritability, anxiety, depression, sadness, anger, guilt, paranoia, decreased sleep, loss of interest in sex, worthlessness, hopelessness, decreased appetite, crying spells, social isolation, motor retardation, and difficulty making decisions.  (Id. at 303-04).  Plaintiff further reported being unable to work because of her depression.  (Id. at 304).

According to Plaintiff, she previously worked as a home health care aide for seven years but quit the job in 2011 because it was stressful, and she could not cope with the demands.  (Id. at 305).  Plaintiff also reported that she was able to perform her own activities of daily living and was able to take care of her own finances.  (Id.).  She stated that she currently smoked approximately half a pack of cigarettes each day and had smoked since she was fifteen years old.  She also reported that she used alcohol "occasionally," and that she had a history of binge drinking on the weekends due to her

---

[11] Plaintiff stated that she "was feeling better" and that her suicidal thoughts had stopped after being hospitalized and "having some medication in her."  (Tr. 304).

depression.[12]   (Id. at 306).   Additionally, Plaintiff reported that she had "tr[ied] marijuana", but she denied "any recent or current use of illicit substances."[13]   (Id. at 306).

During Plaintiff's mental status examination, Dr. Davis observed that Plaintiff was restless and vigilant, that she was "engageable," and that she was in "moderate" distress.   (Id.). In addition, Dr. Davis observed that Plaintiff's eye contact was appropriate; she was oriented to person, place, and time; her immediate, recent, and remote memories were intact; her fund of information and abstraction skills were appropriate; her judgment for hypothetical situations was "good;"[14] her insight was "fair;" her thought processes were "logical" and "coherent;" her mood was sad; her speech was talkative, rapid, pressured, and emotional; and her attention and concentration were impaired.   (Id. at 306-08).

Plaintiff reported no hallucinations or delusions, but stated that her brain was "hot," and she felt that people were

---

[12]   Plaintiff reported that she stopped binge drinking "about a year ago."  (Tr. 306).

[13] Plaintiff's medical records show that she was intoxicated upon her arrival at the New York hospital on May 30, 2012; she tested positive for cannabis upon her arrival at the Tuscaloosa hospital on July 27, 2012; and that she reported using crack cocaine every other day and alcohol every day.  (Tr. 212-13, 216, 220, 227, 271).

[14] In another portion of the report, Dr. Davis noted that Plaintiff's judgment "appeared poor."  (Tr. 308).

out to get her, although not quite as much since she had received treatment in the hospital. (Id. at 307-08). Plaintiff reported a daily routine consisting of completing her activities of daily living, lounging around the house if the family did not have gas to go anywhere, and walking in the yard. (Id. at 308). Plaintiff stated that she did not have the energy to do housework; she did not do yard work; she could do laundry with supervision; she could cook her own meals if necessary; she could shop but did not like to be in crowds; and she did not attend church because she did not like to be around people. (Id. at 308-09).

Dr. Davis diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features, and panic disorder without agoraphobia and opined that Plaintiff's prognosis was "fair with appropriate treatment." He noted that Plaintiff had reported doing better while on her medications but that she did not have the money for them currently. (Id. at 309). Dr. Davis opined that Plaintiff could understand instructions; that she was "not significantly impaired" in her ability to recall instructions; that she "may" be impaired in her ability to carry out instructions due to her anxiety and depression; that she was "quite limited currently" in her ability to respond appropriately to co-workers and supervisors because of her anxiety and depressive symptoms; that work stress

"would likely lead to further declines in her already limited functioning;" and that Plaintiff had "no impairment" in her ability to handle funds, but having someone to assist her with her finances would also be appropriate. (Id. at 305, 309).

Two days later, on August 8, 2012, Plaintiff presented to the Hale County Hospital Clinic requesting a refill of her medications. (Id. at 361). Plaintiff reported that she could not afford her Risperdal or Zoloft, and Dr. Perry Timberlake, M.D., made arrangements for her to get her medications at a low cost, noting "Frank says she can get both for $25 at his place." (Id.).

Approximately two weeks later, on August 24, 2012, non-examining, State Agency psychologist, Dr. Gloria Roque, Ph.D., completed a Mental Residual Functional Capacity assessment and opined that Plaintiff's ability to understand, remember, and carry out very short and simple instructions was "not significantly limited;" that her ability to understand, remember, and carry out detailed instructions, maintain concentration for extended periods, perform activities within a schedule, complete a normal work week, interact appropriately with the general public, co-workers, and supervisors, sustain an ordinary routine without special supervision, respond appropriately to changes in the workplace, and be aware of normal hazards was "moderately" limited; and that her ability to

work in coordination with or in proximity to others, make simple work-related decisions, make realistic goals and plans independently of others, ask simple questions, travel in unfamiliar places, and use public transportation was "not significantly limited." (Id. at 338-40).

On September 20, 2012, Plaintiff presented to West Alabama Mental Health Center ("WAMH") complaining of anxiety and depression and was diagnosed by the staff psychiatrist with major depressive disorder, recurrent with psychotic features. (Id. at 390-92). Plaintiff reported being compliant with her medication (Zoloft and Risperdal) at that time. (Id. at 390). She also reported smoking half a pack of cigarettes a day but denied alcohol and drug use. (Id. at 392). Plaintiff returned to WAMH on October 26, 2012, December 6, 2012, and December 20, 2012, and her treatment notes reflect that she was medication compliant with no side effects; that her progress was "good;" that her sleep patterns had improved with medication; that her appetite was "good;" and that she was "doing well." (Id. at 387-89, 395).

On January 16, 2013, Plaintiff presented to the Hale County Hospital emergency room with complaints of left side and abdominal pain and was diagnosed with pregnancy and a cyst on her left ovary. (Id. at 355, 363, 367, 372, 378). Plaintiff reported smoking cigarettes but denied alcohol and drug use.

(Id. at 355).  Plaintiff was discharged in stable condition with instructions to return for an ultrasound, to make an appointment with her ob-gyn as soon as possible, and to sign up with the health department.  (Id. at 369, 375, 379).  An ultrasound the following day confirmed the pregnancy.  (Id. at 379).

On February 12, 2013, Plaintiff presented to WAMH requesting to see the psychiatrist.  (Id. at 384).  Plaintiff reported that she had stopped taking her medications on January 17, 2013 due to her pregnancy.  (Id. at 385).  Plaintiff also reported that her mood had not been good since she stopped her medication and that she was anxious and depressed, but that she was "doing ok" and coping.  (Id. at 384-85).  The psychiatrist noted that Plaintiff was coping fairly and did not want to take her medication and would wait and see how things progressed. (Id. at 385-86).  Plaintiff returned to WAMH the following month, on March 21, 2013. Her treatment notes reflect that she was still pregnant and was still using both alcohol and cannabis.  (Id. at 383).  At that time, she reported being compliant with her medication.  (Id.).  This is the last treatment note in the record.

On November 4, 2013, three weeks before Plaintiff's hearing, she was examined by Dr. David W. Hodo, M.D., at the request of her attorney.  Dr. Hodo noted that Plaintiff was taking Risperdal and Zoloft, which she acquired from Dr.

Timberlake, and that she reported that she had stopped going to WAMH because she could not afford the co-pay. (Id. at 396). Plaintiff reported that the medications helped her, but she had trouble paying for them. (Id. at 396).

Dr. Hodo noted that Plaintiff's medications had "helped somewhat" but that she "had trouble being consistent with it." (Id. at 397). Plaintiff admitted that she still smoked and that she continued to use alcohol and marijuana. (Id. at 396-97). Dr. Hodo noted Plaintiff's previous diagnoses of depression and her reported diagnosis of schizophrenia. (Id. at 397). Plaintiff reported that, at times, she had thoughts of suicide, paranoia, and visual and auditory hallucinations. (Id.). Dr. Hodo described Plaintiff's activities of daily living as "quite limited" and noted that she did not exercise or drive and that she lived in an isolated area. (Id.). He assigned no physical limitations. (Id.).

In his mental status evaluation, Dr. Hodo noted that Plaintiff "seem[ed] to be depressed," that her affect was flat, that her thoughts were illogical with a flight of ideas, that she had problems concentrating, that she was inattentive and had low energy, that her sensorium was okay (she knew who the president was), that her proverb testing was adequate but abstractions were difficult for her, and that she had some degree of short term memory with some suggestion of

confabulation.  (Id.).  Dr. Hodo's impression was: 1) consider bipolar disorder (as opposed to schizo-affective disorder); depression; generalized anxiety disorder, "probably with some panic;" alcohol and drug problems; and "probably characterological problems as well." (Id. at 398).  Dr. Hodo opined that it is highly unlikely that Plaintiff could manage any financial benefits awarded to her.  (Id.).

Dr. Hodo also completed a Medical Source Opinion Form (Mental). He opined that Plaintiff had marked to extreme limitations in every functional capacity referred to in the form and that the stress of a job would likely cause her condition to deteriorate.  (Id. at 399-400).  Dr. Hodo opined that Plaintiff's medications do "help[]" her ability to function. (Id. at 400).

As discussed above, Plaintiff argues that the ALJ erred in rejecting the opinions of treating psychiatrist Dr. Singh, consultative psychologist Dr. Davis, and examining psychiatrist Dr. Hodo, while crediting the opinions of non-examining psychologist, Dr. Roque.  However, a review of the ALJ's decision reveals that the ALJ only rejected the opinions of these medical sources to the extent that they were inconsistent with the substantial record evidence in the case.

First, with respect to treating psychiatrist, Dr. Singh, who treated Plaintiff during her two-day stay at Northport

Medical Center on July 27, 2012, the ALJ did not reject Dr. Singh's diagnoses of "depressive disorder, NOS," and "polysubstance abuse," nor did he disagree with Dr. Singh's findings that Plaintiff had been non-compliant with her medication and that after two days of treatment with Risperdal and Zoloft, she was "feeling better," had an improved mood, and was psychiatrically stable for discharge. (Id. at 23, 262, 273-74). The ALJ merely noted that Dr. Singh's assignment of a GAF score of 25 upon admission was not supported by Plaintiff's mental status examination at that time, but, nonetheless, the ALJ expressly considered her GAF scores (which he noted were a measure of her functioning at the time of the evaluation), along with all of the evidence as a whole.[15] (Id. at 23).

---

[15] The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. The range of 21-30 is defined as "behavior is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." See Frizzo v. Astrue, 2012 U.S. Dist. LEXIS 120403, *13 n.6, 2012 WL 3668049, *4 n.6 (M.D. Fla. Aug. 7, 2012), report and recommendation adopted sub nom. Frizzo v. Commissioner of Soc. Sec., 2012 U.S. Dist. LEXIS 120399, 2012 WL 3651057 (M.D. Fla. Aug. 24, 2012) (citing Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 34 (4th ed., American Psychiatric Assoc. 2000)). However, the latest edition of the Diagnostic and Statistical Manual of Mental Disorders, "DSM-5," abandoned the GAF scale as a measurement tool. See Hartung v. Colvin, 2016 U.S. Dist. LEXIS 65855, *19 n.2, 2016 WL 2910096, *6 n.2 (E.D. Pa. May 19, 2016). Because of this, "the Social Security

Likewise, with respect to consultative psychologist Dr. Davis, who examined Plaintiff on August 6, 2012, the ALJ did not reject Dr. Davis' diagnoses of "major depressive disorder, recurrent, severe with psychotic features, and panic disorder without agoraphobia" (id. at 309), nor did he reject Dr. Davis' findings that Plaintiff's suicidal ideations had decreased significantly following her recent hospital treatment (id. at 304), that her prognosis was "fair with appropriate treatment," that she reported doing better while on her medications (id. at 309), that she could perform her own activities of daily living and take care of her own finances (id. at 305), and that she was "not significantly impaired" in her ability to understand and recall instructions. (Id. at 309). While the ALJ did take issue with Dr. Davis' opinions that Plaintiff "may" be impaired in her ability to carry out instructions due to her anxiety and depression, that she was "quite limited *currently*" in her ability to respond appropriately to co-workers and supervisors because of her anxiety and depressive symptoms, and that work stress "would likely lead to further declines in her already

---

Administration now permits ALJ's to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; but instructed that a 'GAF score is never dispositive of impairment severity,' and an ALJ should not 'give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence.'" Id. (quoting SSA AM-13066 at 5 (July 13, 2013)).

limited functioning," the ALJ pointed out that Plaintiff had not been compliant with her medications at the time of her evaluation by Dr. Davis, nor had she been honest with Dr. Davis about her alcohol and drug use.   (Id. at 25, 304, 306, 309) (emphasis added).   For those reasons, the ALJ afforded "very limited weight" to Dr. Davis' opinions regarding Plaintiff's ability to function.   The Court agrees with the ALJ's assessment of Dr. Davis' opinions given the substantial evidence that Plaintiff was noncompliant with her medication at the time of her evaluation,[16] that her medications had been largely effective when taken,[17] and that Plaintiff provided inaccurate information to Dr. Davis concerning her use of drugs and alcohol.[18]

---

[16] Dr. Davis expressly noted in her report that Plaintiff was non-compliant with her medications.   (Tr. 304).   Plaintiff's medical records also show repeated instances of non-compliance with her medication.   (Id. at 263, 268, 273, 304, 384-86, 395).

[17] The substantial evidence shows that, when Plaintiff took her medicine, her progress was "good;" her condition improved; she "fe[lt] better;" she was "stable;" and she "d[id] well."   (Tr. 262, 284, 303-04, 384-88, 387-89, 395).   Conversely, when she was off of her medications, her condition deteriorated.   (Id. at 268, 273, 384-85).

[18] Plaintiff reported to Dr. Davis that she used alcohol only "occasionally," and that she had "tr[ied]" marijuana but did not use any illegal drugs.   (Tr. 306).   However, Plaintiff's medical records from May 2012 to March 2013 contain multiple diagnoses of drug and alcohol abuse, including "depressive syndrome disorder made worse by cocaine dependency," cocaine dependence, continuous use, alcohol dependence, episodic and polysubstance abuse.   (Tr. 221, 262).   Also, Plaintiff tested positive for cannabis in July 2012 and admitted to using crack cocaine every other day and to using alcohol daily in May 2012.   (Id. at 216,

Further, the Court rejects Plaintiff's claim that she was non-compliant because she could not afford her medication. The record shows that Plaintiff's medications (Risperdal and Zoloft) were made available to her by Dr. Timberlake at a low cost and, as noted above, although she claimed to be unable to afford her prescribed medications, she continued to fund her cigarette, alcohol, and drug habits. (Id. at 306, 361, 383-86, 392, 396). Thus, her attempt to blame her non-compliance on lack of financial resources is unavailing. See Smith v. Colvin, 2016 U.S. Dist. LEXIS 29991, *16-17, 2016 WL 892776, *6 (N.D. Ala. Mar. 9, 2016) (ALJ properly discounted plaintiff's claim that she could not afford treatment because she no longer had health insurance where the evidence showed that she continued to finance her smoking habit of half a pack of cigarettes a day).

Next, with respect to examining psychiatrist, Dr. Hodo, who examined Plaintiff at the request of her attorney on November 4, 2013, contrary to Plaintiff's argument, the ALJ did not reject Dr. Hodo's diagnoses of (1) possible bipolar disorder, (2)

---

271). Further, contrary to Plaintiff's statements to Dr. Davis, her use of alcohol, cannabis, and crack cocaine has been well documented in the record. (Id. at 212-13, 215-16, 218, 220-21, 227, 271, 383, 392). Ironically, in February and March 2013, at the same time that Plaintiff announced that she was taking herself off of her medication because she was pregnant, she admitted continued use of drugs and alcohol. (Id. at 383-86). She continued to use alcohol and drugs in November 2013. (Id. at 396).

depression, (3) generalized anxiety disorder ("probably with some panic,") and (4) alcohol and drug problems (and "probably characterological problems as well"). (Id. at 398). Rather, the ALJ rejected Dr. Hodo's opinions set forth in a Medical Source Opinion Form (Mental) that Plaintiff has marked to extreme limitations in every functional capacity referred to in the form, as being inconsistent with the substantial evidence in the case. Having reviewed Dr. Hodo's report at length, the Court finds that the ALJ correctly identified inconsistencies therein.

Dr. Hodo's opinions that Plaintiff has marked to extreme limitations in every functional capacity referred to in the form are inconsistent with the substantial record evidence detailed above, that, *when she took her medicine,* Plaintiff's progress was "good;" her condition improved; she "fe[lt] better;" she was "stable;" and she "d[id] well." (Id. at 262, 284, 303-04, 384-88, 395). In fact, Dr. Hodo's own examination notes reflect that her medications helped but that she did not take them consistently. (Id. at 396-97, 400). Moreover, the record is devoid of any opinion by a treating medical source assigning functional limitations in excess of the ALJ's RFC, much less supporting the marked and extreme limitations found by Dr. Hodo. Further, Dr. Hodo's opinion that Plaintiff was incapable of handling her own finances is directly contradicted by

Plaintiff's own statement to Dr. Davis that she could handle her own finances and Dr. Davis' opinion that Plaintiff could handle her own finances. (Id. at 305, 309). Given these inconsistencies, Dr. Hodo's assignment of marked and extreme functional limitations in every measured category is unsupported by the substantial medical evidence in the record. Thus, the ALJ had good cause for rejecting his opinions.

Last, Plaintiff argues that the ALJ erred in assigning significant weight to the opinions of non-examining State Agency psychologist, Dr. Gloria Roque, Ph.D. As discussed, Dr. Roque opined in a Psychiatric Review Technique form that Plaintiff's ability to understand, remember, and carry out very short and simple instructions was "not significantly limited;" that her ability to understand, remember, and carry out detailed instructions, maintain concentration for extended periods, perform activities within a schedule, complete a normal work week, interact appropriately with the general public, co-workers, and supervisors, sustain an ordinary routine without special supervision, respond appropriately to changes in the workplace, and be aware of normal hazards was only "moderately" limited; and that her ability to work in coordination with or in proximity to others, make simple work-related decisions, travel in unfamiliar places, and use public transportation was "not significantly limited." (Id. at 338-40). As the ALJ concluded,

these opinions are consistent with the medical evidence in this case, specifically including the evidence of Plaintiff's improvement of symptoms when on her medication and her worsening of symptoms when non-compliant with her prescribed medication. (Id. at 25-26). Because Dr. Roque's opinion did not conflict with any credible finding or opinion of any examining physician, it was properly given significant weight. See Milner, 275 Fed. Appx. at 948.

Based on the foregoing, the Court finds that Plaintiff's claim that the ALJ erred in assigning significant weight to the opinions of non-examining psychologist, Dr. Roque, while rejecting portions of the opinions of treating psychiatrist Dr. Singh, consultative psychologist, Dr. Davis, and examining psychiatrist Dr. Hodo is without merit. Moreover, having reviewed the record at length, the Court finds that the substantial evidence in this case supports the ALJ's finding that Plaintiff can perform a full range of work at all exertional levels, with the stated non-exertional restrictions (i.e., that she is "limited to non-complex job tasks," and "to no more than occasional contact with the general public and coworkers"), which accommodate Plaintiff's mental limitations. (Id. at 28). Therefore, the Court finds that Plaintiff's claim is without merit.

**V.   Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **28th** day of **September, 2016.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
